**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210054-U

Order filed May 27, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* G.C., a Minor | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| (The People of the State of Illinois, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0054 |
| | ) | Circuit No. 18-JA-108 |
| v. | ) | |
| | ) | |
| David C., | ) | The Honorable |
| | ) | Paula A. Gomora, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) Trial court did not abuse its discretion in allowing supervisor of minor's caseworkers to testify about minor's case and father's progress; and (2) trial court order finding father unfit was not against the manifest weight of the evidence where he failed to complete any services and did not consistently visit or communicate with minor or her caseworkers.

¶ 2     Respondent David C. is the father of G.C. In June 2018, the State filed a petition, alleging G.C. was neglected in that her environment was injurious to her welfare. After an adjudicatory hearing, the trial court ruled that G.C. was neglected. Following a dispositional hearing, respondent

was found unfit. From February 2019 to February 2020, the trial court entered three orders finding respondent failed to make reasonable progress toward the goal of G.C. returning home. On February 7, 2020, the State filed a motion to terminate respondent's parental rights. At the termination hearing, the trial court heard testimony from respondent, one of G.C.'s caseworkers and the supervisor of G.C.'s other caseworkers. Following the hearing, the trial court found respondent unfit and terminated his parental rights. Respondent appeals, arguing that (1) the trial court erred in allowing the caseworkers' supervisor to testify, and (2) the court's unfitness finding was against the manifest weight of the evidence. We affirm.

¶ 3                                            BACKGROUND

¶ 4        On June 15, 2018, the State filed a petition alleging G.C., age two, was a neglected minor in that her environment was injurious to her welfare after she was observed with drug paraphernalia, her mother admitted to continued marijuana use and her mother failed to comply with services. A shelter care hearing was held on July 11, 2018. Respondent was in Cook County Jail and did not attend. Following the hearing, the court entered an order stating there was probable cause to believe G.C. was neglected based on an injurious environment. G.C. was placed in the temporary custody of the Illinois Department of Children and Family Services (DCFS), and the court appointed Court Appointed Special Advocates (CASA) to represent G.C.'s best interests.

¶ 5        On July 23, 2018, a re-shelter hearing was held. Respondent was transported from Cook County Jail to attend. At the hearing, the parties stipulated that G.C. was neglected based on an injurious environment. The parties also stipulated that there was an immediate and urgent need for G.C. to be placed in shelter care because her "mother is in need of substance abuse treatment and is not compliant with intact services" and respondent "is in Cook County custody and has not filed for minor's custody."

2

¶ 6        On October 30, 2018, an adjudicatory hearing was held. Respondent was no longer in jail but did not attend the hearing. Following the hearing, the court entered an order finding G.C. neglected in that her environment was injurious to her welfare because of "a history of domestic violence in [her] home." On November 26, 2018, a dispositional hearing was held. Respondent did not appear. The trial court found respondent unfit because he failed to complete an integrated assessment or engage in any services.

¶ 7        On February 4, 2019, respondent attended a permanency review hearing and agreed to complete an integrated assessment. The trial court told respondent that he would be advised what services to complete after the integrated assessment and told him: "[Y]ou are to engage in those services." The court cautioned respondent that his parental rights could be terminated if he did not make "positive progress towards the goal of return home." The trial court advised respondent: "[I]f you have any difficulty getting into services, getting in contact with someone, that is what your lawyer is for."

¶ 8        On August 15, 2019, another permanency review hearing was held. Respondent did not attend. G.C.'s caseworker, Salvador Arias, filed a permanency hearing report with the court, which stated respondent completed his integrated assessment on February 24, 2019. After that, respondent began visiting G.C. but stopped attending visits shortly thereafter and stopped communicating with Arias. As of July 9, 2019, respondent's whereabouts were unknown.

¶ 9        A permanency review hearing was held on February 4, 2020. Respondent did not attend. According to a report filed by CASA, respondent stopped attending visits with G.C. and became unreachable through CASA or G.C.'s caseworker. G.C.'s caseworker, Gabriela Alvarado, filed a report stating respondent had not contacted her for six months. A diligent search conducted on

December 17, 2019, did not reveal respondent's whereabouts. The report was signed by Alvarado and her supervisor, AnnMarie Coglianese.

¶ 10    On February 7, 2020, the State filed a motion to terminate respondent's parental rights. The motion alleged that respondent was unfit in that he: (1) failed to maintain a degree of interest, concern and responsibility as to G.C.'s welfare; (2) failed to make reasonable efforts to correct the conditions that were the basis for removal of G.C. from March 2019 to December 2019; and (3) failed to make reasonable progress toward the return of G.C. from March 2019 to December 2019.

¶ 11    On March 10, 2020, respondent's counsel filed a motion to withdraw, asserting that respondent "failed to contact counsel or make any effort to apprise himself of the status of this case." According to counsel, respondent had not communicated with him or attended court in over a year. The trial court granted the motion.

¶ 12    A family service plan completed by Alvarado and approved by Coglianese on July 1, 2020, stated that respondent had not contacted Alvarado, and his whereabouts were unknown. A diligent search for respondent was conducted on February 25, 2020, but respondent was not located.

¶ 13    The final permanency review hearing was held on August 17, 2020. Respondent was not present. At that time, a court report was filed by G.C.'s new caseworker, Laura Ingalls. It stated that respondent last saw G.C. on April 28, 2019. The report was signed by Ingalls and Coglianese.

¶ 14    On January 21, 2021, a termination hearing was held. At the hearing, the State introduced into evidence four exhibits: the trial court's permanency review orders entered on February 4, 2019, August 15, 2019, February 4, 2020, and August 17, 2020, in which the court ruled respondent had not made reasonable efforts toward the goal of G.C. returning home.

¶ 15    Salvador Arias testified that he was G.C.'s caseworker at Guardian Angel Community Services (Guardian Angel) from October 2018 to approximately July 2019. During that time,

respondent completed an integrated assessment. Based on the results of the assessment, respondent was supposed to complete the following services: (1) perform a substance abuse assessment and follow any recommendations from the service provider, (2) obtain and maintain employment and appropriate housing, (3) attend parenting classes, (4) participate in parent coaching, (5) attend individual therapy, and (6) visit G.C. While Arias was G.C.'s caseworker, respondent did not complete any of his required services. Arias did not provide respondent with a written service plan because Arias lost contact with respondent shortly after he completed the integrated assessment.

¶ 16    Arias had no contact with respondent from October 2018 until February 4, 2019, when he appeared in court. After that, Arias saw respondent for his integrated assessment and "one or two parent/child visits." Respondent participated in weekly visits with G.C. for approximately two months but stopped when scheduling issues arose. By April 2019, respondent stopped communicating with Arias. Arias made attempts to locate respondent but was unsuccessful. Respondent did not visit G.C. after the summer of 2019.

¶ 17    On direct examination, AnnMarie Coglianese, a foster care supervisor for Guardian Angel, testified that G.C. has received foster care services from Guardian Angel since 2018. Coglianese testified she is familiar with G.C.'s case because she has been the supervisor on the case since July 2019, when Gabriella Alvarado replaced Arias as G.C.'s caseworker. According to Coglianese, respondent completed the integrated assessment in February 2019, and attended four visits with G.C. from February to April 2019. Respondent completed no required services. Since April 2019, respondent had no visits with G.C. and had no contact with anyone at Guardian Angel. Respondent was informed of future court dates and administrative case reviews but failed to attend them. Coglianese had no knowledge of respondent having any communication with G.C. after April 2019. She was not aware of respondent sending G.C. any cards or letters.

5

¶ 18   On cross examination, Coglianese agreed she obtained information about G.C.'s case from reviewing the case file completed by G.C.'s caseworkers. Coglianese was not G.C.'s caseworker and had no personal contact with respondent.

¶ 19   On redirect examination, Coglianese testified that she had monthly meetings with G.C.'s caseworkers to discuss the details of the case. Alvarado, who no longer works for Guardian Angel, was G.C.'s caseworker from July 2019 to May 2020. Laura Ingalls became G.C.'s caseworker after that and was still her caseworker at the time of the termination hearing. Ingalls was not present at the termination hearing because she was ill. When the State asked Coglianese if respondent contacted the agency after April 2019, respondent's counsel objected on hearsay grounds. The trial court partially sustained and partially overruled the objection, ruling that Coglianese could testify about Alvarado's contact with respondent because Alvarado no longer worked at Guardian Angel. Coglianese testified, without objection, that respondent failed to complete any services.

¶ 20   At the time of the termination hearing, respondent was incarcerated in Cook County and had been since May 18, 2020. He testified he had not been contacted by any of G.C.'s caseworkers during his incarceration. He denied ever been told that he was required to complete services and denied being referred to any agencies for services. He testified that he began visiting G.C. every other week in late 2018 or early 2019. He testified that he met with Arias three or four times. He said he saw Alvarado a couple times when he visited G.C., but she never informed him he needed to complete services.

¶ 21   Respondent testified that he visited G.C. without Guardian Angel's knowledge in 2019 when G.C. was placed with an acquaintance of his. At the time of the hearing, respondent had not had any contact with G.C. or visited her in over a year. Respondent said he tried to contact Guardian Angel in January and February 2020 but was given no information about G.C.'s

whereabouts. Respondent never filed a petition seeking custody of G.C. Respondent agreed that he was appointed an attorney in July 2018, but said he "lost touch" with him and lost his phone number. Respondent agreed he could have looked up the attorney's phone number.

¶ 22    Following the hearing, the trial court entered an order finding respondent an unfit parent because he failed to maintain a reasonable degree of interest, concern, or responsibility as to G.C.'s welfare.

¶ 23                                    ANALYSIS

¶ 24                                       I.

¶ 25    Respondent first argues that the trial court erred in allowing Coglianese to testify because she relied on reports contained in Guardian Angel's case file, which were neither admitted into evidence nor written by her.

¶ 26    The admissibility of evidence is within the sound discretion of the trial court, and a reviewing court will not disturb evidentiary determinations absent a clear abuse of discretion. *In re A.S.,* 2014 IL App (3d) 140060, ¶ 28.

At a termination hearing, a witness cannot testify about events recorded in the case file about which she has no personal knowledge. See *In re M.H.*, 2020 IL App (3d) 190731, ¶ 20; *In re A.B.*, 308 Ill. App. 3d 227, 237 (1999). However, when a witness has direct knowledge of the information contained in the case file because of her involvement in the case, she can provide testimony about the contents of the case file, including a parent's progress or lack thereof. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 64.

¶ 27    An objection to evidence must be timely made when the evidence is first introduced. See *Hunter v. Chicago & North Western Transportation Co.*, 200 Ill. App. 3d 458, 472 (1990). A party must make a proper and timely objection to preserve an argument that the court erred in

admitting evidence. *In re Estate of Doyle*, 362 Ill. App. 3d 293, 303 (2005). When evidence is admitted without a timely objection, the parties forfeit on appeal any argument regarding the admission of the evidence. See *People v. Lefler*, 294 Ill. App. 3d 305, 309 (1998) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)).

¶ 28    Because termination of parental rights affects a fundamental liberty interest, a court may consider whether a forfeited issue constituted plain error. *In re L.B.*, 2015 IL App (3d) 150023, ¶ 11. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The plain-error doctrine is a limited and narrow exception to the forfeiture rule. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The doctrine allows a reviewing court to consider an unpreserved error where either (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the scales of justice against the accused, regardless of the seriousness of the error or (2) a clear or obvious error occurs and the error is so serious that it affects the fairness of the trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill.2d 551, 565 (2007).

¶ 29    Before we determine whether plain error occurred, however, we must first determine whether any error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). This requires a substantive review of the issues raised on appeal. *People v. Walker*, 232 Ill. 2d 113, 125 (2009). If clear or obvious error did not occur, no plain-error analysis is necessary. *People v. Wright*, 2017 IL 119561, ¶ 87; *Walker*, 232 Ill. 2d at 124-25.

¶ 30    In this case, respondent forfeited review of the admissibility of Coglianese's testimony by failing to timely object to it. Respondent first objected to the Coglianese's testimony after the State questioned Coglianese on direct examination and respondent further questioned her on cross

8

examination. It was not until well into the State's redirect examination that respondent first objected to Coglianese's testimony. The question respondent objected to on redirect examination – respondent's contact with Guardian Angel after April 2019 – had already been asked by the State and answered by Coglianese on direct examination. Because respondent did not object to the State's question on direct examination when it was first asked, respondent's objection was untimely. See *Hunter,* 200 Ill. App. 3d at 472. Respondent cannot now argue on appeal that Coglianese's testimony was inadmissible. See *Doyle*, 362 Ill. App. 3d at 303; *Lefler*, 294 Ill. App. 3d at 309.

¶ 31 Forfeiture aside, Coglianese's testimony was properly admitted. Coglianese testified that she obtained information from reviewing G.C.'s case file, which was prepared by G.C.'s caseworkers. However, Coglianese also testified that she was the supervisor assigned to G.C.'s case from July 2019 to the time of the termination hearing. During that time, Alvarado and Ingalls were G.C.'s caseworkers. As the caseworkers' supervisor, Coglianese discussed G.C.'s case, including respondent's progress, regularly with Alvarado and Ingalls. Both Coglianese and the caseworkers signed the reports documenting respondent's actions and inactions that were provided to the court prior to the permanency review hearings. Because Coglianese's knowledge of G.C.'s case and respondent's progress did not come solely from reading reports written by others, it was proper for Coglianese to testify about events that transpired during the time she was supervisor of G.C.'s caseworkers. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 64.

¶ 32 Respondent contends that our decision in *In re M.H.*, 2020 IL App (3d) 190731, requires a different result. We disagree.

¶ 33 In *M.H.*, we ruled that the minor's caseworker, who took over the minor's case in February 2019, could not testify about incidents that occurred prior to February 2019 because the

9

caseworker's knowledge was solely "based on her reading of the case file." 2020 IL App (3d) 190731, ¶ 20. Because the caseworker "had secondhand knowledge, at best, of the events" that occurred before she was the minor's caseworker, we found it was error for the court to allow the caseworker to testify about those events. *Id.*

¶ 34 Here, unlike the caseworker in *M.H.*, Coglianese had direct knowledge of G.C.'s case and respondent's progress from July 2019 to the time of the termination hearing based on her regular conversations with Alvarado and Ingalls, not just reports written by them. Coglianese testified only about events that occurred once she became involved in the case as a supervisor. She did not provide any testimony about what transpired before that time. Thus, *M.H.* is distinguishable and not controlling.

¶ 35 Because we find no error in the admission of Coglianese's testimony, there can be no plain error. See *Wright*, 2017 IL 119561, ¶ 87; *Walker*, 232 Ill. 2d at 124-25.

¶ 36                                                                 II.

¶ 37 Next, respondent contends that the trial court's unfitness finding was against the manifest weight of the evidence because he visited G.C. and completed his integrated assessment. He claims he did not complete any services because he was never advised he had to do so or provided with a service plan.

¶ 38 A parent may be found unfit under the following grounds: failing to maintain a reasonable degree of interest, concern or responsibility for the child's welfare; failing to make reasonable efforts to correct the conditions warranting the child's removal; and failing to make reasonable progress toward the return home of the child. 750 ILCS 50/1D(b), (m)(i), (m)(ii) (West 2018). When the State alleges more than one ground of unfitness, a finding that the State has proved any allegation is sufficient to sustain an unfitness finding. *In re D.H.*, 323 Ill. App. 3d 1, 9 (2001). It is

10

the State's burden to prove parental unfitness by clear and convincing evidence. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 29. An unfitness finding is entitled to great deference and will only be reversed on appeal if it is against the manifest weight of the evidence. *D.H.*, 323 Ill. App. 3d at 9. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *In re D.F.*, 332 Ill. App. 3d 112, 124 (2002).

¶ 39        Under the first unfitness ground, a parent may be unfit for failing to maintain a reasonable degree of interest, concern or responsibility for the welfare of the child. 750 ILCS 50/1D(b) (West 2018). Any one of the three elements may form a basis for unfitness. *B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. To determine unfitness under this ground, the court looks at the efforts by the parent to visit and maintain contact with the child. *Id.* Other factors include whether the parent inquired about the child's welfare or whether he or she completed the service plans. *Id.* The court focuses on the efforts of the parent, not whether he or she succeeded, examining "the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *Id.* Circumstances may include difficulty in obtaining transportation, poverty, conduct by others that hindered visitation, and the need to resolve the parent's own life issues. *Id.*

¶ 40        A parent who is incarcerated can show interest, concern and responsibility by visiting the child while out on bond and requesting visitation with the child while incarcerated. See *In re A.F.*, 2012 IL App (2d) 111079, ¶ 42; *In re Konstantinos H.*, 387 Ill. App. 3d 192, 205-06 (2008). Where visitation is impracticable, a parent may express concern through phone calls, letters or gifts. *Konstantinos H.*, 387 Ill. App. 3d at 204. The parent's interest, concern or responsibility must be objectively reasonable. *B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31.

¶ 41        "Noncompliance with an imposed service plan and infrequent or irregular visitation with the child may be sufficient to warrant a finding of unfitness under section [1(D)](b)." *Konstantinos*

11

*H.*, 387 Ill. App. 3d at 204 (citing *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004)). A parent's failure to remain in contact with his or her child's caseworkers demonstrates a lack of interest, concern and responsibility as to the child's welfare. See *In re C.D.*, 2020 IL App (3d) 190176, ¶¶ 34, 36.

¶ 42        In this case, G.C. came into DCFS custody in July 2018. Respondent was incarcerated at the time but was present for the re-shelter hearing. Respondent was no longer incarcerated at the time of the adjudicatory and dispositional hearings in October and November 2018, but he failed to attend either hearing. When respondent appeared in court for the February 4, 2019 permanency review hearing, the trial court advised respondent that he would have to complete services. Shortly after that, respondent completed an integrated assessment and visited G.C. a few times but stopped visiting G.C. and communicating with G.C.'s caseworkers by April 2019. While respondent testified that he visited G.C. after that without Guardian Angel's knowledge, he admitted he stopped visiting G.C. by the end of 2019. Respondent failed to attend scheduled court hearings in August 2019, February 2020 and August 2020. In March 2020, respondent's attorney filed a motion to withdraw because respondent had not communicated with him or appeared in court in over a year. In May 2020, respondent was arrested and placed in custody in Cook County. Respondent was transported from Cook County Jail to attend the termination hearing in January 2021.

¶ 43        From the time G.C. was placed into DCFS custody until the termination hearing, a period of over two-and-a-half years, respondent repeatedly failed to appear in court, visited G.C. only a few times over a few months, stopped communicating with his attorney, and made no attempt to communicate with G.C.'s caseworkers for nearly two years. At the time of the termination hearing, respondent admitted he had not visited G.C. or attempted to contact her in over a year. Nor did

12

respondent send G.C. any cards, gifts, or letters. Respondent pointed out that he had been incarcerated for several months prior to the termination hearing; however, respondent's incarceration did not prevent him from expressing interest or concern in G.C. by contacting her by phone or requesting visitation with her. See *In re A.F.*, 2012 IL App (2d) 111079, ¶ 42; *Konstantinos H.*, 387 Ill. App. 3d at 205-06; *In re M.M.*, 261 Ill. App. 3d 71, 74 (1994).

¶ 44     Moreover, respondent failed to complete any services. While respondent claims he was never advised he had to complete services, the record shows otherwise. At the only permanency review hearing respondent attended, in February 2019, the court informed respondent that after he completed his integrated assessment, he would have a number of services to complete. The court instructed respondent: "[Y]ou are to engage in those services." The court advised respondent to contact his attorney if he had any problems initiating or completing services.

¶ 45     Respondent also contends he was never given a list of services to complete. While this is true, respondent has only himself to blame. Shortly after he completed his integrated assessment, respondent stopped communicating with G.C.'s caseworker and could not be located for nearly two years. Respondent's failure to remain in communication with G.C.'s caseworkers and advise them of his whereabouts made it impossible for them to provide him with pertinent information, including the service plan.

¶ 46     Respondent's failure to attend court hearings, failure to maintain regular visitation and contact with G.C. and her caseworkers, and failure to complete any services demonstrates that he has not maintained a reasonable degree of concern, interest or responsibility in the welfare of G.C. Therefore, the trial court's finding that respondent was unfit pursuant to section (1)(D)(b) of the Adoption Act was not against the manifest weight of the evidence.

¶ 47                                     CONCLUSION

13

¶ 48    The judgment of the circuit court of Will County is affirmed.

¶ 49    Affirmed.