# Illinois Official Reports

## Appellate Court

---

**_In re M.H._, 2020 IL App (3d) 190731**

---

| | |
|---|---|
| Appellate Court Caption | *In re* M.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Edward H. and Marlene H., Respondents-Appellants). |
| District & No. | Third District<br>No. 3-19-0731 |
| Filed | April 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Iroquois County, No. 11-JA-11; the Hon. James Kinzer, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James A. Martinkus, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellants.<br><br>James Devine, State's Attorney, of Watseka (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Presiding Justice Lytton and Justice Wright concurred in the judgment and opinion. |

¶ 1      The respondents, Edward H. and Marlene H., appeal the circuit court's finding that they were unfit to parent M.H., arguing that the finding of unfitness was based on improper evidence.

¶ 2      I. BACKGROUND

¶ 3      At the outset, we note that Edward and Marlene solely challenge the evidence presented at the fitness hearing and the court's subsequent finding of unfitness. Therefore, we limit our background to only the facts relevant to those proceedings.

¶ 4      In August 2011, the State filed a petition for adjudication of wardship of M.H., alleging that M.H. was neglected in that her environment was injurious to her health due to Marlene's continuous use of alcohol and failure to provide adequate care and Edward's inability to provide adequate care based on his mental health issues. 705 ILCS 405/2-3(1)(b) (West 2010). An adjudicatory hearing was held on January 4, 2012, and the court found M.H. neglected.

¶ 5      On December 12, 2013, the State filed a motion to terminate parental rights. On January 8, 2019, the State filed an amended petition to terminate parental rights, stating that Marlene and Edward were unfit and failed to make reasonable progress toward the return home of M.H. during the nine-month period beginning March 1, 2018. 750 ILCS 50/1(D)(m) (West 2018).

¶ 6      A fitness hearing was held on September 23, 2019. Siki Adigun testified that she was a caseworker for the National Youth Advocate Program, which is affiliated with the Department of Children and Family Services (DCFS). As a caseworker, she met with parents and minors, took notes based on those meetings and discussions, and "based upon those notes *** draft[ed] reports," which she provided to the court. She agreed that her "reports and notes are made *** contemporaneous with [the meetings]."

¶ 7      Adigun became the caseworker on this case in February 2019. Before she was assigned to the case, other caseworkers were on the case, and she reviewed the whole case file. The case file included information from March 1, 2018, to December 1, 2018. The State asked Adigun whether, during that time period, Edward and Marlene were required to engage in services. The respondents' counsel objected, stating that there was no foundation as to how she knew this. The court overruled the objection, stating, "They have to work off of records *** because there is often a turn over [*sic*] in case workers and even management agencies." The State then asked what services Edward was required to participate in. The respondents' counsel again objected, stating that Adigun was testifying as if she had personal knowledge and was summarizing the case file, which had not been admitted into evidence. The court overruled the objection, stating that it appreciated the paraphrase so that they did not have to wade through the records.

¶ 8      Adigun stated that, during the applicable time period, Edward was required to complete individual therapy, meet with an autism coach, and complete domestic violence classes. Adigun stated that Edward did not attend any therapy appointments, meet with the autism coach, or attend any domestic violence classes during the requisite time period nor did the records show that he tried to set up such services during that period of time. During the requisite time period, Marlene was required to attend and complete individual therapy, attend Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings, and work with the autism coach.

Marlene was discharged from individual therapy for noncompliance, did not provide proof of attending AA/NA meetings during the requisite time period, and did not meet with the autism coach.

¶ 9    Adigun stated that M.H. had severe autism. She observed M.H. and stated,

> "She does not speak. She does not, you know, go in elevators. She does not climb stairs. She does not do well with new environment[s], new people. She needs to be cared for regularly meaning when I say cared for regularly meaning her physical, you know, her daily living skills. She needs to be taught and she's—at this point she's not able to care for herself."

M.H. was living with a foster parent who had specialized autism training, and they met with an autism coach every week. On cross-examination, the respondents' counsel asked Adigun whether she had brought with her any of the case file that she had based her testimony on. Adigun said that she had not brought anything with her. The State did not present any other evidence. The respondents did not present any evidence.

¶ 10    As argument, the respondents' counsel said that the questioning of Adigun anticipated that the underlying reports would be introduced into evidence. The respondents' counsel noted that the State had not sought to admit into evidence any of the records upon which Adigun had relied and Adigun's testimony amounted to hearsay. The State asked for a continuance to get the records and tender them to the court and the respondents' counsel. The court granted the motion, continuing the case "for [the] State to supplement the record with respect to the issue of fitness."

¶ 11    The case was recalled on October 29, 2019. The State sought to admit three DCFS service plans dated February 20, 2018, August 17, 2018, and February 8, 2019. The respondents' counsel stated that he had never seen these plans and that they had not been provided to him. The respondents' counsel objected to their introduction, stating that the State had not laid a proper foundation for the introduction of the service plans. The State responded that they did lay a foundation with Adigun. The court overruled the respondents' objection and admitted the documents but stated that the respondents' counsel could look over the service plans, issue subpoenas, or call Edward and Marlene to testify to the accuracy of the records, if they wished to do so. The respondents' counsel stated, "Judge, we are actually prepared to go forward. I guess it's our case now and we will have no evidence to present so we rest." The court found that Edward and Marlene were unfit by reason of their failure to complete the services required by the service plans.

¶ 12    A best interest hearing was then held, after which the court found that it was in the best interests of M.H. that the parental rights of Edward and Marlene be terminated.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Edward and Marlene argue the court erred by (1) admitting the three service plans under the business records exception without a proper foundation and (2) allowing Adigun to testify regarding the case file.

¶ 15    At the outset, the State points out that respondents have forfeited these issues by failing to file a posttrial motion addressing them. *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 45 ("To preserve an issue for appellate review, a party must, even in child custody cases, object at trial and file a written posttrial motion addressing it."). "However, since termination of parental

rights affects a fundamental liberty interest, we will consider the issue for plain error." *In re L.B.*, 2015 IL App (3d) 150023, ¶ 11.

¶ 16 The Juvenile Court Act of 1987 (Act) specifically provides for the admission of business records into evidence so long as statutory foundational requirements are met. 705 ILCS 405/2-18(4)(a) (West 2018). Section 2-18(4)(a) of the Act provides:

> "Any writing, record, photograph or x-ray of any hospital or public or private agency, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of the business of the hospital or agency and that it was in the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. A certification by the head or responsible employee of the hospital or agency that the writing, record, photograph or x-ray is the full and complete record of the condition, act, transaction, occurrence or event and that it satisfies the conditions of this paragraph shall be *prima facie* evidence of the facts contained in such certification. A certification by someone other than the head of the hospital or agency shall be accompanied by a photocopy of a delegation of authority signed by both the head of the hospital or agency and by such other employee. All other circumstances of the making of the memorandum, record, photograph or x-ray, including lack of personal knowledge of the maker, may be proved to affect the weight to be accorded such evidence, but shall not affect its admissibility." *Id.*

"This provision is a variation of the common-law 'business records' exception to the hearsay rule." *In re A.B.*, 308 Ill. App. 3d 227, 235 (1999).

¶ 17 The parties do not contend, and the record does not show, that the three service plans, here, were accompanied by any certification. Absent such certification, for the service plans

> "to be admissible as a business record under [this section], the proponent must establish a foundation showing that the writing was (1) made as a memorandum or record of the event, (2) made in the ordinary course of business, and (3) made at the time of the event or within a reasonable time thereafter." *Id.*

The author of the writing does not need to testify. *Id.* Instead, "anyone familiar with the business and its procedures may testify about how the writing was prepared." *Id.* "We review the admission of evidence pursuant to section 2-18(4)(a) for an abuse of discretion." *In re J.Y.*, 2011 IL App (3d) 100727, ¶ 13.

¶ 18 Here, the State failed to satisfy the requirements of section 2-18(4)(a) because it failed to elicit any testimony regarding the production of the service plans. Adigun provided the only testimony for the State. At the beginning of her testimony, she stated that she worked as a caseworker for the National Youth Advocate Program, which is an agency affiliated with DCFS. As a caseworker, she met with parents and minors, took notes based on those meetings and discussions, and "based upon those notes *** draft[ed] reports," which she provided to the court. She agreed that her "reports and notes are made *** contemporaneous with [the meetings]." The record on appeal shows that Adigun did file a permanency hearing report in May 2019. However, Adigun did not provide any information regarding the production of DCFS service plans. She did not claim any familiarity with the procedures for creating service plans like those the State presented in court. In fact, she did not discuss the service plans at all.

While service plans are the type of records admissible under this exception, the State did not provide any other testimony or evidence to satisfy the three-prong foundational requirements for the business records exception. The fact that service plans have been admitted in other cases "does not excuse a party from satisfying section 2-18(4)(a) requirements." *Id.* ¶ 15. Therefore, the court abused its discretion in admitting the service plans.

¶ 19 Moreover, the court erred by allowing Adigun to testify regarding the information she gleaned from reading the file she inherited with the case. "Under the business records exception, whether pursuant to section 115-5 of the Code of Criminal Procedure [of 1963 (725 ILCS 5/115-5 (West 1996))], Supreme Court Rule 236 [(Ill. S. Ct. R. 236 (eff. Aug. 1, 1992))], or section 2-18(4)(a) of the [Act], 'it is the business record itself, not the testimony of a witness who makes reference to the record, which is admissible.' " *In re A.B.*, 308 Ill. App. 3d at 236 (quoting *Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 130 (1992)). Stated another way, a witness may not testify or provide a summary of the contents of the documents. *Id.*

¶ 20 The only evidence the State presented was Adigun's testimony and the three service plans. Adigun did not become a caseworker on this case until February 2019, two months after the close of the relevant nine-month time period measuring unfitness. Her knowledge regarding Edward and Marlene's unfitness during the nine-month time period was based on her reading of the case file. The court permitted, over the respondents' objection, testimony regarding Adigun's reading of the case file. Adigun "had secondhand knowledge, at best, of the events that led to the conclusions contained in the service plans." *Id.* at 237. It was error for the court to allow her testimony regarding the documents contained in the case file. See *id.*

¶ 21 We note that we need not remand for a new fitness hearing if other evidence submitted was "sufficient to establish at least one ground of parental unfitness by clear and convincing evidence." *Id.* However, the State did not present any other evidence that Edward and Marlene failed to make reasonable progress toward the return of the minor during the applicable nine-month period. Therefore, we reverse the finding of unfitness, and remand for the court to conduct a new fitness hearing. Because a finding of unfitness is a condition precedent to the termination of parental rights (*In re P.J.*, 2018 IL App (3d) 170539, ¶ 15; *In re S.D.*, 2011 IL App (3d) 110184, ¶ 33), we also reverse the court's termination order.

¶ 22 In coming to this conclusion, we note that the State argues that we can affirm for any reason in the record and states that "it was the correct decision to terminate both parents' parental rights." However, the decision as to whether a parent is unfit should be based only upon evidence properly admitted at the fitness hearing. *In re A.B.*, 308 Ill. App. 3d at 239.

¶ 23 III. CONCLUSION

¶ 24 The judgment of the circuit court of Iroquois County is reversed and remanded.

¶ 25 Reversed and remanded.