**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210125-U

Order filed August 18, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* J.G., A.G., and S.G., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Minors | ) | Will County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos. 3-21-0125, 3-21-0126, |
| Petitioner-Appellee, | ) | and 3-21-0127 |
| | ) | Circuit Nos. 16-JA-55, 16-JA-56, and |
| v. | ) | 16-JA-57 |
| | ) | |
| JOSE J. G.L., | ) | Honorable |
| | ) | Paula A. Gomora, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice McDade and Justice Lytton concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's order terminating respondent's parental rights is reversed where the caseworker testimony regarding information contained in the case file was inadmissible.

¶ 2   The respondent, Jose J. G.L., appeals from the circuit court's order terminating his

parental rights to his minor children, J.G., A.G., and S.G. On appeal, the respondent argues that:

(1) the trial court erred by allowing the caseworker to testify in regard to the contents of the case

file; (2) the trial court's finding that respondent was an unfit parent was against the manifest weight of the evidence; and (3) the trial court's finding that it was in the minors' best interest to terminate his parental rights was against the manifest weight of the evidence. We reverse and remand.

¶ 3                                      I. BACKGROUND

On April 28, 2016, the State filed a juvenile petition for wardship for each of the minors, alleging that the minors were neglected in that their environment was injurious to their welfare in that J.G. (A.G. and S.G.'s sibling) was born exposed to a controlled substance in the fall of 2015. On May 31, 2016, a first appearance on the petitions took place, and the State requested intact family services. The trial court ordered respondent and the minors' mother to cooperate with all recommendations of intact family services made by the Department of Children and Family Services (DCFS).

¶ 4            On August 2, 2016, the State requested a shelter care hearing. At the shelter care hearing on September 20, 2016, the attorney for the State indicated that the minors had been residing in the same residence as respondent and their mother, with their maternal grandmother living a few houses away. The State agreed to allow the minors to stay in the home with respondent, with their maternal grandmother babysitting them while respondent was at work, if their mother moved out of the residence. The trial court indicated, "this is all very dependent upon [the minors' mother] reengaging in substance abuse treatment." The minors' mother agreed and indicated she would be looking into inpatient treatment. The trial court ordered that the minors were to reside with respondent, their mother was not to reside in the home with them, the minors' mother was to cooperate with all treatment recommendations, and both respondent and the minors' mother were to comply with DCFS.

2

¶ 5 On May 28, 2017, respondent was taken into custody for a DUI (driving under the influence). On June 28, 2017, a shelter care hearing took place. The trial court found probable cause to believe the minors were neglected due to an injurious environment as the result of J.G. being born exposed to opiates. The trial court further found an immediate and urgent necessity existed for the protection of the minors and for the minors to be placed in shelter care on the basis of the trial court's findings that: the family had been receiving intact services since October 2015; the minors' mother had engaged in services but had relapsed at the end of 2016 (although she was recently compliant); respondent was incarcerated in the Will County Adult Detention Facility; the caseworker had concerns with the minors being in the care of their mother while she was still engaged in services; and the relationship between the minors' mother and their maternal grandmother was unhealthy.

¶ 6 On October 4, 2017, the State filed an amended juvenile petition alleging that the minors were neglected due to an injurious environment in that J.G. was born exposed to a controlled substance and, in addition, that the minors were dependent in that they were without a parent, custodian, or legal guardian. At the adjudicatory hearing on October 23, 2017, respondent stipulated to allegations of the minors' dependency on the basis that he had been, and currently still was, incarcerated pending DUI charges and the minors' mother was now deceased. The trial court entered an adjudicatory order finding the minors were dependent in that they were without a parent, guardian, or legal custodian.

¶ 7 On November 20, 2017, a dispositional hearing took place. The State entered the dispositional report, service plan, and visitation schedule into evidence, with respondent's attorney indicating that he had no objection. After hearing arguments from the attorneys, the trial court found that it was in the best interest of the minors to make them wards of the court based

3

upon its finding that the minors' mother had passed away in September 2017 and respondent had been incarcerated and was in federal custody pending possible deportation. The trial court found respondent dispositionally unfit for some reason other than financial circumstances alone to care for, protect, train, or discipline the minors, with the factual basis being that respondent was in federal custody pending possible deportation. The trial court also noted that respondent had not completed services outlined in the service plan, "namely, substance abuse treatment." The trial court found it was in the best interest of the minors to remove them from respondent's care. Respondent was allowed visitation with the minors at the McHenry County jail, although it appeared that respondent's attorney was not sure where respondent was being held at the time. The trial court set the permanency goal as return home within 12 months.

¶ 8        At permanency review hearings conducted on January 10 and July 30, 2018, and February 5, 2019, the trial court found that respondent made no reasonable progress toward the goal of return home. Respondent was still in federal custody pending possible deportation at the time of the first two of those hearings and did not appear. The minors visited with respondent while he was in custody in the United States two times per month and respondent had phone contact with the minors three times per week. Respondent's attorney informed the trial court at the hearing on July 30, 2018, that respondent's federal defender had indicated that respondent had entered a guilty plea to the federal offense of illegally reentering the country. At the end of January 2019, respondent was deported to Mexico and was reportedly living with his sister. It was reported to the trial court that all three minors were born in the United States and were United States citizens.

¶ 9        On November 19, 2018, the State had filed a petition to terminate respondent's parental rights. The State subsequently filed an amended termination petition on July 16, 2019. In the

amended petition, the State alleged that: the minors J.G., A.G., and S.G were approximately ages 4, 8, and 12, respectively; the mother of the minors was deceased; and respondent was unfit to care for them. The State alleged that respondent was unfit because he failed to make reasonable progress toward the return of the minors to him within nine months after an adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act (750 ILCS 50/1(D)(m)(iii) (West 2019)), with the State specifying the nine-month period as October 23, 2017, to July 31, 2018.

¶ 10        On March 15, 2021, the trial court conducted a hearing on the State's petition to terminate respondent's parental rights. Respondent participated via phone from Mexico (after many attempts over the course of months to conduct the hearing with video via Zoom). Respondent's attorney was present in the courtroom.

¶ 11        At the unfitness hearing, the State called as its only witness, the current caseworker, Lynn Eashmon. Eashmon testified that the minors had entered shelter care in April 2016 and she had been assigned this case in January 2020. When Eashmon took over the case she received all materials, reports, and files pertaining to the case to get herself familiar with the family and the circumstances. Eashmon testified that it was her understanding that the main reason the children had come into the care of DCFS was because respondent "was in the car with the kids drunk driving" and there were also substance abuse concerns regarding the minors' mother. Eashmon indicated that respondent was arrested for DUI on May 28, 2017, and remained in custody until he was deported to Mexico in February 2019. After respondent went to jail for the DUI, the minors then lived with their maternal grandmother. The minors' mother died on September 29, 2017, and their maternal grandmother died later that same year in November 2017. Eashmon testified that the minors were made wards of the court in November 2017. Eashmon testified that

respondent had a service plan prior to his DUI arrest (in May 2017), with his recommended services being to engage in individual therapy, complete a mental health assessment, sign a consent of release for those services, participate in a parenting class, and participate in random drug tests and substance abuse services. Eashmon testified there had been no documentation indicating that respondent completed any services and that throughout the pendency of his case his recommended services had remained the same. Eashmon testified that respondent had never given her any proof of completion of any services for the applicable timeframe of October 23, 2017, through July 31, 2018. Eashmon had corresponded with respondent three times since September 2020 via video through a phone application. Eashmon testified that respondent was unsatisfactory with regard to his service plan for the timeframe of October 23, 2017, to July 31, 2018. To her knowledge, respondent had never been rated satisfactory in regard to his service plans.

¶ 12        On cross-examination by respondent's counsel, Eashmon testified that: prior to adjudication hearing on October 23, 2017, the case had been pending for intact family services, with respondent working and living with the minors' mother; respondent was arrested on May 28, 2017, for a DUI offense, and he was subsequently convicted of that offense; upon being arrested, respondent was in the Will County jail until after he was sentenced for DUI, after which time he was taken into custody by the Immigration and Customs Enforcement agency (ICE); and respondent was deported on January 18, 2019. Eashmon testified that she had been informed there were no services available to respondent while he was in jail or in federal custody. Eashmon testified that the service plan of June 6, 2018, acknowledged that respondent was already in the Will County jail. Eashmon testified that there had been another service plan entered in June 2020, and she sent respondent a service plan in September 2020 to the address

6

that respondent had provided. She discussed the services with him when they spoke on the phone. Respondent told Eashmon that there were no services available to him in Mexico. Eashmon acknowledged respondent had maintained contact with the minors on a regular basis through phone calls. Eashmon testified it was her understanding that because respondent was deported, he was not allowed to return to the United States. On redirect examination, Eashmon testified that respondent was placed on a schedule to communicate with the minors on Monday evenings because they had an issue with him calling randomly under the influence at all times of the day and night. Respondent had spoken with the minors the last Monday but had not talked to them the prior two weeks. The minors did not communicate with respondent as regularly as they had in the past. Respondent was still maintaining contact with the minors, and the minors indicated they wanted to continue contact with respondent.

¶ 13    After conferring with respondent, respondent's attorney did not call any witnesses but, instead, entered into evidence documents of respondents' guilty plea for aggravated DUI (entered on November 2, 2017), the order of 24 months of probation in that case (also entered on November 2, 2017), respondent's deportation order, and respondent's guilty plea to federal charges of illegally reentering the country after respondent had previously been deported and removed from the United States on or about June 17, 2005.

¶ 14    The trial court found that respondent was unfit in that he failed to make reasonable progress toward the return of the minors to him within nine months of adjudication of neglect, from October 23, 2017, to July 31, 2018.

¶ 15    Immediately thereafter, a best interest hearing took place. The trial court found by a preponderance of the evidence that it was in the best interest of the minors that respondent's parental rights be terminated.

7

Respondent appealed.

¶ 16                                    II. ANALYSIS

¶ 17         On appeal, the respondent argues that: (1) the trial court erred by allowing the caseworker to testify in regard to the contents of the case file; (2) the trial court's finding that respondent was an unfit parent was against the manifest weight of the evidence; and (3) the trial court's finding that it was in the minors' best interest to terminate his parental rights was against the manifest weight of the evidence. The State and the attorney for the minors argue that the trial court properly permitted the caseworker to testify from the business records and the trial court's finding of unfitness and its finding that it was in the best interest of the minors to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 18         First, respondent argues the trial court erred by admitting the testimony of Eashmon because it was based upon her review of the contents of the file and she did not have personal knowledge of information contained therein in relation to the time before she was assigned to the case. Respondent concedes that he failed to make a hearsay objection during the trial but requests that we review the issue under the plain error doctrine.

¶ 19         To preserve an issue for appellate review, a party must raise the issue in the trial court. *In re Lakita B.*, 297 Ill. App. 3d 985, 991 (1998); see also Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb.1, 1994).  Objections to evidence that are not raised in the trial court are generally forfeited on appeal. See *In re M.H.*, 2020 IL App (3d) 190731, ¶ 15. "However, since termination of parental rights affects a fundamental liberty interest, we will consider the issue for plain error." *Id.* (quoting *In re L.B.*, 2015 IL App (3d) 150023, ¶ 11). "[A] reviewing court should not easily declare forfeiture of an argument directed at a decision to terminate [parental] rights." *In re Br. M.*, 2021 IL 125969, ¶ 4.

8

¶ 20        At a termination hearing, a witness cannot testify as to contents of the case file about which she has no personal knowledge. See *M.H.*, 2020 IL App (3d) 190731, ¶ 20. However, when a witness has direct knowledge of information within the case file because of her involvement in the case, she can provide testimony about the contents of the case file. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 64.

¶ 21        Section 2-18(4)(a) of the Juvenile Court Act of 1987 (Juvenile Court Act) provides for the admission of certain business records into evidence so long as statutory foundational requirements are met. See 705 ILCS 405/2-18(4)(a) (West 2018). Section 2-18(4)(a) provides:

> "Any writing, record, photograph or x-ray of any hospital or public or private agency *** made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of the business of the hospital or agency and that it was in the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter." *Id.*

¶ 22        Section 2-18(4)(a) of the Juvenile Court Act applies equally in proceedings to terminate parental rights under either the Juvenile Court Act or the Adoption Act. *In re S.J.*, 407 Ill. App. 3d 63, 68-69 (2011); *In re Precious W.*, 333 Ill. App. 3d 893, 901 (2002) (providing that when the Adoption Act and the Juvenile Court Act are construed together, as provided in section 2.1 of the Adoption Act (750 ILCS 50/2.1 (West 2000)), the fitness hearing under the Adoption Act is a continuation of the abuse, neglect, or dependency proceeding of the Juvenile Court Act so that

9

the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act is applicable to a fitness hearing pursuant to the Adoption Act).

¶ 23    Here, respondent contends that Eashmon's testimony about "events recorded in the case file that occurred before [she] was the assigned caseworker" was admitted erroneously. Respondent notes the State did not introduce the case file into evidence but, rather elicited from Eashmon testimony about events that occurred prior to her joining the case. Respondent contends that without entering the case file into evidence, Eashmon was barred from testifying about the contents of the file as to any secondhand knowledge of events in 2017 and 2018. Respondent argues that Eashmon's testimony "was nothing more than classic hearsay." Respondent further contends that Eashmon had no direct knowledge of "the events" and simply "summarized the contents of the case file."

¶ 24    In this case, it appears that Eashmon had personal knowledge of some information she testified to on direct examination pertaining to the timeframe after she became involved with the case in January 2020—services had not been completed by respondent, respondent had told her that services were not available in Mexico, and information as to respondent's recommended services since the time she became involved in the case (individual therapy, complete a mental health assessment, sign a consent of release for those services, participate in a parenting class, and participate in random drug tests and substance abuse services). Respondent, himself, submitted evidence showing that he was arrested for DUI on May 28, 2017, and that he subsequently pled guilty to that DUI charge, pled guilty to federal charges of illegally reentering the United States, and was deported to Mexico in early 2019. On cross-examination, respondent also elicited testimony from Eashmon that upon being arrested on May 28, 2017, respondent was in the Will County jail until after he was sentenced for DUI, after which time he was taken into

10

custody by ICE and was deported on January 18, 2019. See *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (if a party procures, invites, or acquiesces in the admission of evidence that party cannot contest its admission on appeal).

¶ 25       However, Eashmon's testimony regarding information she otherwise learned from the contents of the case file regarding respondent's reasonable progress during the relevant nine-month period was allowed in error. See *M.H.*, 2020 IL App (3d) 190731, ¶ 19 (the trial court erred by allowing the caseworker to testify about information gleaned from reading the file she inherited with the case). Respondent was found unfit pursuant to section 1(D)(m)(ii) of the Adoption Act because he failed to make reasonable progress during the nine-month period after the minors were adjudicated dependent, with the relevant period being October 23, 2017, to July 31, 2018. See 750 ILCS 50/1(D)(m)(ii) (West 2018). The benchmark for measuring a reasonable progress includes compliance with service plans and the court's directives in light of the condition that gave rise to the removal and conditions that later become known that would prevent the return of custody of the child to the parent). *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 68 (citing *In re C.N.*, 196 Ill. 2d 181, 211 (2001). "In determining whether a parent has made reasonable progress toward the return home of the minor, the trial court is to consider evidence occurring only during the relevant nine-month period." *Id.*

¶ 26       Here, the State concedes that it did not request the trial court to take judicial notice of service plans or of the dispositional report to show respondent's lack of reasonable progress. See *In re J.G.*, 298 Ill. App. 3d 617, 629 (1998) (if the State wishes for the trial court to take judicial notice of portions of the court file in a parental unfitness proceeding, the State should make a proffer to the court of the material requested to be noticed and defense counsel should then be allowed an opportunity to object to the state's request). Rather, the State elicited inadmissible

11

testimony from Eashmon related to information she gleaned from the case file related to the relevant nine-month period, but Eashmon did not become a caseworker on this case until January 2020. A witness may not testify or provide a summary of the contents of the documents. *In re A.B.*, 308 Ill. App. 3d 227, 236 (1999) (it is the business record, and not the testimony of a witness referencing the record, which is admissible under section 2-18(4)(a) of the Juvenile Court Act).

¶ 27 Thus, insofar as Eashon testified about events in the file prior to her time as caseworker to which she had no personal knowledge, such testimony was erroneous. We conclude that the error in this case affected the fairness of the trial and challenged the integrity of the judicial process where, without the erroneous evidence, there was insufficient evidence to support the trial court's unfitness finding. See *M.H.*, 2020 IL App (3d) 190731, ¶ 21. We, therefore, reverse the trial court's finding of unfitness and remand this matter for a new fitness hearing. Because a finding of unfitness is a condition precedent to the termination of parental rights (*M.H.,* 2020 IL App (3d) 190731, ¶ 21), the trial court's termination order is also reversed.

¶ 28 III. CONCLUSION

¶ 29 The judgment of the circuit court of Will County is reversed and remanded.

¶ 30 Reversed and remanded.